STANSBURY'S CASE. See Case No. 17,709.

## Case No. 13,292.
### STANSBURY v. TAGGART.
[3 McLean, 457.][1]

Circuit Court, D. Ohio. July, 1844.

VENDOR AND PURCHASER — DEFECT IN TITLE — RIGHT TO WITHHOLD PURCHASE MONEY—NOTICE — CLAIM FOR CONVEYANCE — ADVERSE POSSESSION—TAX TITLE.

1. A purchaser of land, with a full knowledge of the title and of certain pretended claims, who receives a deed, cannot withhold a part of the purchase money on account of the alleged defect.

2. He must seek redress on the warranty, should he suffer damage by the adverse claim.

3. Until the adverse claim shall be established, there is no ground to injoin the recovery of the purchase money.

4. Where a purchase is made of land to be paid for in carpenter's work, the deed to be made when the work was done, until the work is done, there is no ground on which to claim a conveyance.

5. A possession under such a purchase without deed cannot, by lapse of time, ripen into a title.

6. The purchaser's possession is the possession of the vendor, the same as landlord and tenant.

7. But possession under a deed is adverse.

8. The nature of the possession is always ascertained, when the statute or lapse of time is pleaded.

9. A tax title is utterly void, if the land be sold in a wrong name, under a wrong assessment.

In equity.

[1] [Reported by Hon. John McLean, Circuit Justice.]

22FED.CAS.—67

Mr. Stansbury, for plaintiff.
Mr. Taylor, for defendant.

OPINION OF THE COURT. This is an injunction bill, in which the complainant asks that certain incumbrances paid off by him, on a tract of land purchased from the defendant, shall be set off against a judgment for the purchase money. In the action at law (Taggart v. Stanbery [Case No. 13,724]), the complainant set up the same matters in defence, but the court held that, as the defendant Stanbery had accepted a deed for the land, with a full knowledge of the alleged incumbrances, and having long been in possession, he could not set up this defence in an action for the consideration money. The main facts in the present case are not dissimilar to those in the case at law. In 1830, one Graham purchased from Cadwallader Wallace, the agent of the defendant, a tract of land. The complainant purchased Graham's interest, and became responsible for the payment of the purchase money. In his letter to Wallace, the agent, the 26th March, 1833, the complainant says, "Having purchased from Mr. Graham his right, I am authorised to receive a deed for lot 4, upon my paying $401 67, with interest." &c.; "and this I am willing to pay on receiving a good title to the land." He further remarks, that "on the 27th November, 1809, Alexander M'Laughlin made an agreement for the sale of the land with Lemuel Kirkland, who shortly after took possession, and has held possession ever since. And although he does not pretend that he has performed the work mentioned in the contract, or that he has paid any money to M'Laughlin, or to any other person, he now claims the land as his own," &c. "Kirkland's chief reliance is upon his peaceable possession of twenty-three years;" and he remarks, "I am of opinion, that neither the statute of limitations, or the tax sale, will protect Kirkland against the claim of the true owner of the land. But from the time which has elapsed since the date of the contract, the law may raise a presumption that the contract has been complied with." But he says, "I am nevertheless willing to pay the money due on your contract with Graham, and receive a general warranty deed; or I will take a quit claim, pay one half of the money due, and run all risks." He proposed to institute a suit for the recovery of the land, and if he should fail, he presumes "that he shall have no difficulty in obtaining the repayment of the money, interest, &c., from the grantor."

In his letter to the agent, dated 16th July, 1833, he says, "It will be very difficult to get along with an ejectment in the name of Taggart, as the large parchment deeds would have to be sent on to Philadelphia," &c.; and he suggests, that the difficulty would be obviated by executing a deed to him, and he gives a description of the property, which he requests may be inserted in the deed. By a letter, August 9th ensuing, the complainant re-

quests that the deed might be executed to his son, who would execute a mortgage to secure the payment of the purchase money. On the 20th of the same month, Wallace, as the agent of Taggart, executed a deed for the land, containing covenants of a general warranty, and against incumbrances.

On the 27th of November, 1809, Alexander M'Laughlin, as appears from a contract under seal, sold lot No. 4, to Samuel Kirkland, for the consideration of five hundred and ten dollars, to be paid in carpenter or house joiner's work, at Philadelphia prices, when required. When payment was made, a deed in fee simple was to be executed. Shortly after the contract of purchase, Kirkland entered into the possession of the land, built a cabin, and cleared about thirty-five acres. He continued in possession twenty-three years. Some time after the contract, Kirkland was employed as a carpenter, on a house which M'Laughlin was building in Zanesville, but he was discharged from the work. It does not appear how long he worked, nor for what cause he was discharged. That he could not have labored on the house more than a few days is probable, and it does not appear that he has ever paid, or offered to pay, in work or otherwise, the purchase money. On the 31st of December, 1832, the land was sold for taxes to James Holmes, for twelve dollars and thirty-five cents, as the property of William Rodgers and John Holmes. Whether the complainant instituted an action of ejectment does not appear; but it is presumed he did not. He purchased the claim of Kirkland, as he alleges, for four hundred dollars, and the tax title for nineteen dollars. These sums, with the interest thereon, are claimed as an equitable off-set against the judgment. At the time M'Laughlin sold the land to Kirkland, he owned only one third of it—one third being owned by Taggart, and the other by Grey and Taylor. It is proved that M'Laughlin, at the time of the contract with Kirkland, had a power of attorney to sell from the other proprietors, but, in the sale, he does not assume to act as their agent. The purchase of the claim of Kirkland by the complainant was made, not only without the knowledge of Taggart, or his attorney, but against an express arrangement on the subject. On the repeated applications of the complainant to Wallace, the agent, the deed was executed before the consideration money was paid, in order that an ejectment might be brought against Kirkland. The deed being obtained, no suit was instituted, but Kirkland's claim was purchased. Under such circumstances, whether in law or equity, the transaction should be scrutinized, and no allowance made to the complainant, unless it shall clearly appear that the incumbrance purchased, was bona fide, and could be legally enforced. With this view we will examine the claim of Kirkland. That under the contract he had no right to a conveyance from M'Laughlin is clear. No part of the consideration is pre-

tended to have been paid, and, until such payment, the deed, by the terms of the contract, was not to be executed. It is true payment was to be made in work when required, but this does not change the principle of law applicable to such contracts. Suppose the consideration was to have been paid in money when required; could the purchaser before such payment, or a tender of it, demand a conveyance? The only excuse alleged by the complainant in this respect, for the default of Kirkland is, that he was discharged from laboring on the house of M'Laughlin, in Zanesville, and has not since been required to do work as a carpenter or joiner. The circumstances under which he was discharged, are not stated. He may have been found incompetent, unfaithful, or worthless, which not only authorised his discharge, but rendered it necessary. But however this may be, there is no excuse given for the non-performance of his contract by Kirkland, on which can be founded an equitable claim for a title. He had been in possession twenty-three years, under a contract of purchase, no payment having been made, and this was all his pretence of right. The indifference shown by Kirkland, as to the payment of the consideration, coupled with the lapse of time, effectually barred his claim for a title. After the lapse of twenty-three years, except under extraordinary circumstances, it is too late for the vendee to ask a decree for a conveyance, on the offer to pay the consideration. The changes in the value of the land, and the interest of the vendor, as in this case, constitute an insuperable objection to the favorable action, in his behalf, of a court of equity.

The principal stress in the argument is laid on the possession of Kirkland. It is insisted that that possession ripened into a perfect title under the statute of limitations.

M'Laughlin owned only one third of the land sold, being a tenant in common with Taggart, Grey and Taylor. And although he had a power of attorney from his co-tenants, to sell the lands generally, in Ohio, in which they were interested, yet in making the sale in question, he did not act under this power. He sold the land in his own right. Now it is clear, as against M'Laughlin, the statute did not run. Kirkland's possession was not adverse to M'Laughlin's right. The entry being made under him, until the payment of the consideration and the execution of the deed, the possession of Kirkland was the possession of M'Laughlin. In this respect, the rule of law is the same, as between landlord and tenant. But it is insisted, that if the possession did not protect Kirkland against M'Laughlin, it was adverse to his co-tenants. And this is attempted to be sustained on the ground that the sale by M'Laughlin was an ouster of his co-tenants; and that the statute begins to run from the time of such ouster. If this be admitted, does it follow that the benefit of the statute enures to Kirkland? He enters, in effect, as the tenant of M'Laughlin, claiming

the land. it is true, by purchase from him. He claimed the land as his own, but he claimed it only as a purchaser, without deed, not having paid any part of the consideration. His purchase must necessarily be referred to as showing the nature of his entry and claim. Had he entered under a deed from M'Laughlin, his possession would have been adverse to all the tenants; but, in many respects, bearing the relation of tenant, he can set up no title hostile to that under which he entered. He could not protect himself by purchasing a title paramount to M'Laughlin's. Failing to comply with his contract, he was liable to be turned out of possession, and made responsible for the rents and profits of the land while he occupied it. A claim of protection under the statute need not be sustained by a valid title; but the claimant must act bona fide in asserting an adverse title. He must believe that his title is valid. If he enter under another's title, he asserts such title, and not his own. This is peculiarly the case with a tenant, and also of a purchaser who has neither received a deed nor paid any part of the consideration.

It appears that after the purchase by Kirkland, a partition of lands owned by M'Laughlin, Taggart, Grey and Taylor was made, and the tract now in controversy was allotted to Taggart. He, as well as the other tenants, being non-residents, were within the savings of the statute; so that if Kirkland's possession were adverse to all the tenants, except M'Laughlin, still the statute does not operate. This is conclusive as regards the assertion of any title by Kirkland under the statute. Lapse of time, under the circumstances, cannot avail him. All presumption of payment is rebutted by admitted facts, and gross negligence rebuts any equitable considerations favorable to the purchase. But it is said if Kirkland had been ejected from the premises, that he would have been entitled to compensation for his improvements. In estimating this compensation, the rents would have been taken into the account, and a moderate computation of rents would, in twenty-three years, have overbalanced a reasonable charge for improvements. Little more than thirty-five acres of ground were cleared, and the buildings were cabins of the most ordinary kind. There is no evidence that the tax title, for which the sum of sixteen dollars was paid by the complainant, was valid. The land seems not to have been sold as the property of the owners, but as belonging to other persons. The mere certificate of sale, which upon its face seems to be invalid, without any other evidence of its legality, did not constitute an incumbrance which the complainant, by paying, could charge against the vendor. A payment being voluntary, and without notice to authorise such a change, must appear to have been made, to remove a legal incumbrance. The deed executed by Wallace to the complainant, contained covenants of general warranty, and against incumbrances. After receiving it without objection, and holding under it for years, it is too late to object that it did not contain a covenant of seizin. The deed was obtained by the complainant, before he paid the consideration, to enable him to bring an action of ejectment against Kirkland. This allegation is made by the complainant, and it shows why the covenant of seizin was not inserted, if the complainant, under the contract with Graham, had a right to require it.

Under all the circumstances of the case, it appears that the claim of Kirkland had no foundation in law or equity, and that such is the character of the tax title, and consequently the payments made by the complainant, to remove these pretended incumbrances, were made in his own wrong, and cannot constitute a charge against the defendant.

The injunction is dissolved, and bill dismissed at the complainant's costs.